### In re WRIGHT.

(District Court, W. D. New York. April, 1910.)

No. 2,407.

1. BANKRUPTCY (§ 148*)—ASSETS—INSURANCE AGENT'S FUTURE COMMISSIONS.

Where an insurance agent's contract entitled him to an interest in renewal premiums on policies previously written, when collected, so long as the contract was in force, and in case of his death his widow or estate was entitled to receive such interest for five years, less a fee for collection, such interest was property which passed to the agent's trustee in bankruptcy as a part of the assets of his estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 148.*]

2. BANKRUPTCY (§ 408*)—TRANSFER OF ASSETS—CONCEALMENT OF PROPERTY WITH INTENT TO DEFRAUD—"REFUSAL OF A DISCHARGE."

Where, pending bankruptcy proceedings against a general insurance agent, the referee erroneously determined that the bankrupt's interest in

renewal premiums under his contract was not a part of his estate, and pending review thereof, on which the referee's decision was reversed, the bankrupt collected all or nearly all his earned commissions and appropriated them, such act did not warrant the "refusal of a discharge" under Bankr. Act July 1, 1898, c. 541, § 14, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), providing for the denial of a discharge in case the bankrupt has destroyed or concealed his property with intent to hinder, delay, or defraud his creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 408.*]

**3.** BANKRUPTCY (§ 417*)—DISCHARGE—REVOCATION—FRAUD.

The fraud for which a bankrupt's discharge may be set aside must relate to actual fraud theretofore knowingly practiced by the bankrupt, such as might have been urged against the granting of a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 869; Dec. Dig. § 417.*]

**4.** BANKRUPTCY (§ 250*)—ASSETS—DISPOSITION BY BANKRUPT.

Where, pending review of a referee's determination in bankruptcy proceedings that certain commissions on renewal premiums to which the bankrupt was entitled did not constitute assets, the bankrupt collected and appropriated such commissions, after which the referee's decision was reversed, it was the trustee's duty to follow and recover such commissions in the interest of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 250.*]

**5.** BANKRUPTCY (§ 417*)—DISCHARGE—REVOCATION—PETITION—AMENDMENT.

A petition for revocation of a bankrupt's discharge could not be amended by the pleading of a new objection after the expiration of one year from the date of the discharge.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 417.*]

In the matter of bankruptcy proceedings as to William F. Wright. On application for revocation of discharge. Denied.

See, also, 157 Fed. 544, 85 C. C. A. 206.

Charles P. Norton, for petitioning creditor and trustee.
George P. Keating, for trustee.
Van Gorder, Holt & Crane and Elijah W. Holt, for bankrupt.

HAZEL, District Judge. This is an application for the revocation of the discharge of the bankrupt William F. Wright from his debts. The important question submitted is whether such discharge was obtained by him through his fraud. The claim is that he connived with his employer, the Union Central Life Insurance Company, to cancel an existing contract for services and substitute therefor another contract of employment by which he was to receive for his services a stipulated annual salary in lieu of his interest under the former contract in renewal premiums on policies, and that he wrongfully collected $5,508.66, commissions on earned renewal premiums on insurance policies. That the interest of the bankrupt in his unexpired contract of agency was an asset of the bankrupt estate passing to his trustee was decided in Re Wright, 157 Fed. 544, 85 C. C. A. 206, affirming (D. C.) 151 Fed. 361.

The present record shows that on October 26, 1906, the referee in bankruptcy decided that the commissions earned by the bankrupt at the time of his adjudication in bankruptcy did not pass to his trustee, as

the contract involved relations of confidence and trust, and therefore the benefits to be derived therefrom did not belong to the bankrupt estate. On February 23, 1907, the District Court reversed the referee, holding that the commissions on premiums becoming due after the bankruptcy under the renewal policies obtained by the bankrupt inured to the bankrupt estate. The order reversing the referee was entered on March 12, 1907, and subsequently, on March 15th, the bankrupt regularly obtained his discharge without objection by any creditor. During the intervening time between the decision of the referee and the decision by this court the bankrupt at different times collected all or nearly all his earned commissions, and accordingly the trustee contends that in appropriating or collecting such commissions the bankrupt violated section 14 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]) and destroyed or concealed his property with intent to hinder and delay or defraud his creditors. I do not agree with this contention. The payment of the commissions by the insurance company and the collection thereof by the bankrupt before the decision of this court was rendered and while the decision of the referee stood unreversed did not constitute intentional fraud against the creditors. That the referee was not affirmed in his ruling is immaterial.

The special master has rightfully found, I think, that the fraud by which the discharge was obtained must have related to fraud theretofore knowingly practiced by the bankrupt. It must have been an actual fraud, such as could have been urged against the granting of the discharge. In the present case it may be assumed that there was no substantial foundation for the charge of fraud at the time the discharge was applied for or granted, as neither the trustee nor the petitioning creditor opposed it, or requested that it be delayed until the appeal from the decision of the District Court overruling the referee could be decided by the Circuit Court of Appeals. No one interested in the proceedings applied for an order restraining the bankrupt from canceling the contract or collecting his earned commissions on premiums, as might have been done directly after the petition in bankruptcy was filed or the facts were ascertained. The trustee, however, is not entirely deprived of his remedy. As already indicated, the Circuit Court of Appeals held that the insurance commissions collected by the bankrupt since the filing of the petition, but earned under the contract, belong, not to the bankrupt, but to the trustee. Hence, in the interest of creditors, it is his duty to follow the assets of the bankrupt estate wherever they may be found, even though the right to recover is closed to him in this proceeding to revoke the discharge.

The petitioning creditor also moved the court to amend the petition for revocation, and for further reference to the special master, on the ground of newly discovered evidence; i. e., that the bankrupt omitted from his schedule an unliquidated claim or cause of action against one Lockhart. Concededly an application for the revocation of a discharge must have been made within one year after the discharge, and, such period from the time of the discharge herein having expired, the amendment should not be allowed. Under the prior bankrupt act, such

an amendment was not permitted after the expiration of the time limited by the act. In re Sims (D. C.) 9 Fed. 440; Mall v. Ullrich (D. C.) 37 Fed. 653. Under the present act Judge Purnell, in Re Shaffer (D. C.) 104 Fed. 982, made a similar ruling, and I hold, therefore, that the objecting creditor is precluded at this time from attacking the order discharging the bankrupt.

So ordered.