In re CUTHBERTSON.

(District Court, D. South Dakota, S. D.    December 12, 1912.)

1. BANKRUPTCY (§ 417*)—DISCHARGE—VACATION—JURISDICTION.

Jurisdiction of a judge of the bankruptcy court to set aside a discharge is limited, and can be exercised only on a petition filed by a party or parties in interest, who have not been guilty of laches, within a year after the discharge was granted, alleging that the discharge was obtained through the bankrupt's fraud, that knowledge of the fraud came to the petitioners after the granting of the discharge, and that the actual facts

did not warrant the discharge, as provided by Bankr. Act July 1, 1898, c. 541, § 15a, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428.)

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*]

2. BANKRUPTCY (§ 417*)—DISCHARGE—VACATION—PETITION.

Where a petition to vacate a bankrupt's discharge for fraud did not allege when petitioner acquired knowledge of the fraud, it was demurrable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*]

3. BANKRUPTCY (§ 417*)—DISCHARGE—VACATION—FRAUD—FAILURE TO DEMUR.

Where a petition to vacate a bankrupt's discharge was demurrable, the bankrupt's failure to demur and the filing of an answer, with no affirmative admission of jurisdictional facts omitted from the petition, did not relieve petitioner from pleading and proving each of the jurisdictional requirements.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*]

4. BANKRUPTCY (§ 417*)—DISCHARGE—VACATION—KNOWLEDGE OF OBJECTION.

A bankrupt's discharge will not be vacated, unless the court in which the application is made is satisfied that the creditor or his representatives had no knowledge of the objection at the time of the discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*]

5. BANKRUPTCY (§ 417*)—DISCHARGE—VACATION—"FRAUD."

"Fraud" sufficient to set aside a bankrupt's discharge means bad faith, involving moral turpitude or intentional wrong, as distinguished from fraud in law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*

For other definitions, see Words and Phrases, vol. 3, pp. 2943–2954; vol. 8, p. 7666.]

6. BANKRUPTCY (§ 417*)—DISCHARGE—VACATION—FRAUD—CONCEALMENT OF ASSETS.

Where a bankrupt, having transferred an interest in real property to a trustee to enable him to maintain suits to quiet title, called the transaction to the attention of her counsel, who was an able lawyer, at the time her bankruptcy schedules were executed, and was advised by him that she had no interest in the property, and that it should not be referred to in the bankruptcy proceedings, her omission of such interest did not constitute such actual fraud as would authorize vacation of her discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*]

7. BANKRUPTCY (§ 417*)—DISCHARGE—VACATION—JURISDICTION.

A court of bankruptcy has general power, like any other court, to amend its decrees, in its discretion, in the furtherance of justice, in the absence of statutory prohibition, but has no power to vacate a discharge after the expiration of a year.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Emma G. Cuthbertson. Application to set aside an order of discharge. Denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

L. H. Salinger, of Carroll, Iowa, for petitioner.

Saunders & Stuart and Tinley & Mitchell, all of Council Bluffs, Iowa, for bankrupt.

ELLIOTT, District Judge. The bankrupt's voluntary petition to be adjudged a bankrupt was filed August 24, 1911. From an examination of this petition it appears that in Schedule B3 attached thereto, it is stated that she had no unliquidated claims of any nature; and it further appears that she claimed in said petition to be possessed of no property whatever.

No trustee was appointed, and no claims were filed against her estate, and thereafter, on the 9th day of October, 1911, the bankrupt filed petition for her discharge. Notice was duly given, and thereafter, on the 4th day of December, 1911, said bankrupt procured her discharge, which was duly entered upon that date.

On the 18th day of November, 1912, Ralph McLean, the petitioner herein, filed his petition as one of the creditors of said bankrupt, whereby he petitioned for a revocation of the said order of discharge, in which petition he sets forth, in substance, the date of the filing of the petition to be adjudged a bankrupt, the statement, in substance, of the contents of said petition with reference to the property of the bankrupt; that among her creditors she listed in Schedule A3 to the petition a judgment for $108.18, dated April 2, 1901; that such judgment existed, had never been reversed or satisfied, and that the petitioner is the owner of the same; that the petition in bankruptcy was referred to the referee, and that on the 4th day of September, 1911, the bankrupt was by said referee duly adjudged and declared such; that on the 9th day of October, 1911, she filed her petition for a full discharge from all debts provable against her estate, and in said petition made oath that she had not done, or suffered or procured to be done, or been a party to, any act, matter, or thing specified in said acts as a ground for withholding her discharge thereunder, or for revoking the same if granted, and particularly that she had not committed any offense punishable by imprisonment, as in said acts provided; that thereafter, upon notice being given on the 4th day of December, 1911, said bankrupt procured her discharge; that the judgment owned by the petitioner was for a debt incurred by the bankrupt in the purchase of farm machinery, and was rendered on a note given for the purchase price thereof; that it was thus a debt provable against the estate of said bankrupt, under the acts of Congress relating to bankruptcy; that the petitioner or Sayller & Shoemaker, who at that time owned the judgment and thereafter assigned it to petitioner, never either of them proved said debt against the bankrupt estate, and no person listed as a creditor did prove a claim against the estate of the bankrupt, nor was any trustee ever appointed, and said estate has never been closed; that the judgment of the plaintiff is not a lien upon the real property of the bankrupt or any interest she may have in real property in the state of Iowa, for the reasons stated in the petition, and all remedy thereon is cut off by the bankrupt's discharge; that on the 15th day of October, 1912, the bankrupt, in an action

brought by another in the district court of Iowa, in and for Carroll county, to quiet such other's title to certain lands lying in the county, filed a pleading, asserting that she had been on the 14th day of March, 1910, and at all times since, the real owner of an undivided one-half of the lands in controversy, praying to have title quieted in her to such one-half, subject to two mortgage liens thereon and her liability to one B. I. Salinger for moneys expended in litigation over said title; that she further alleged that she had parted with the title to said premises on the 15th day of March for the sole purpose that said Salinger, as trustee, might conduct certain litigation to reduce the amount of liens then existing against said land, and that he carried on the litigation until as late as the 12th day of March, 1912, seeking a reduction of said liens, and that he succeeded and secured a new title as her trustee and agent; that said title existed and said litigation was being carried on for said purpose with her knowledge and consent at the very time she applied for her said discharge, and on the day when same was granted; that this suit to quiet title could not be tried and decided before the expiration of the year within which revocation of said bankrupt's discharge might be applied for.

The petitioner also averred that if the bankrupt's allegations in said pleadings be true her discharge should be revoked and set aside for the fraud involved in concealing the existence of said assets from the bankruptcy court.

It further alleges, if said allegations be true, the bankrupt had committed an offense punishable by imprisonment, as by said acts provided, having made a sworn oath in her said petition and in the schedules attached thereto and in her petition for discharge; that said Sayller & Shoemaker, who assigned said judgment to petitioner, did not prove their debt against the bankrupt's estate, because they were informed and believed that the bankrupt had sworn in her petition that she had no assets whatever; wherefore petitioner prayed the discharge of said bankrupt be revoked and set aside.

Thereupon an order to show cause was issued, fixing a day for her examination touching the matters therein referred to, and the same was duly served upon the bankrupt. Thereafter the bankrupt appeared with her attorneys and the petitioner appeared by his counsel, and in the absence of the judge of this court the examination of the said bankrupt was, by stipulation, taken before Anna Jost and transcribed by her; and the rights of the petitioner herein are submitted upon the written evidence of the bankrupt, so taken, the pleadings and a stipulation filed.

[1] I am of the opinion that the authority of the judge to revoke the discharge in bankruptcy is confined and limited. It can be exercised only upon a petition filed, complying with the provisions of section 15a of the Bankruptcy Law, which provides:

"The judge may, upon the application of parties in interest, who have not been guilty of undue laches, filed at any time within one year after discharge shall have been granted, revoke it upon a trial, if it shall be made to appear that it was obtained through the fraud of the bankrupt, and that the knowledge of the fraud has come to the petitioners since the granting of the discharge, and that the actual facts did not warrant the discharge."

A mere casual analysis of this section discloses the following elements, all of which must, in my judgment, appear in the petition to give the court jurisdiction to act: (1) The application must be made by a party or parties in interest. (2) The petition must allege that the petitioner has not been guilty of undue laches. (3) The petition must be filed within one year after the discharge shall have been granted. (4) There must be allegations in effect, if true, that the discharge of the bankrupt was obtained through the fraud of the bankrupt. (5) That the knowledge of the fraud has come to the petitioner since the granting of the discharge. (6) That the actual facts did not warrant the discharge.

There is no allegation in the petition filed herein with reference to the lack of laches of the petitioner.

[2] There is no statement of facts in this petition that in any manner refers to the knowledge of the said fraud by the petitioners, or when such knowledge came to the petitioners.

It is questionable whether there is an allegation in this petition that the bankrupt has any interest in the property referred to in the petition.

I am of the opinion that this section of the law requires that the "knowledge of the fraud has come to the petitioner since the granting of the discharge," and that it is essential, and is jurisdictional. Note in Re Marionneaux's Case, Fed. Cas. No. 9,088.

In each and every one of the foregoing particulars the burden of proof is upon the petitioner, and every requirement of this statute is absolutely essential to be proven. In re Mauzy (D. C.) 163 Fed. 900.

[3] In this view of the record this petition was demurrable. The bankrupt, however, failed to demur. She failing to enter a demurrer and filing an answer herein, with no affirmative admission of these jurisdictional facts, did not relieve the petitioner from pleading and proving each of these statutory requirements.

There is absolutely nothing in the record submitted to me upon this hearing that would justify a finding upon either of the essentials above numbered 2 and 5. And in this state of the record I do not consider it necessary to make a finding with reference to No. 6.

In every one of the particulars above numbered, I repeat, the burden of proof is upon the petitioner, and every requirement of the statute is absolutely essential to the power of the court to grant the relief prayed for. All these conditions must exist. In re Upson (D. C.) 124 Fed. 980. The purpose of this limitation is to restrict this process to those frauds which shall be discovered after the discharge. Collier on Bankruptcy, 299. And the grounds on which the application rests must be strictly pleaded. In re McIntyre, Fed. Cas. No. 8,823; Lathrop v. Stewart, 6 McLean, 630, Fed. Cas. No. 8,112. Allegations should be made showing that knowledge of the facts constituting grounds for the revocation came to the petitioners since the granting of the discharge. In re Oliver (D. C.) 133 Fed. 832.

It has been said that the moving creditor in a proceeding upon a petition of this character, under this section of the statute, should con-

form more strictly to the pleadings in his proof than on a contested discharge.   Collier on Bankruptcy, 373.

[4] A discharge will not be vacated, unless the court is satisfied that the creditor or his representatives had no knowledge of the objection at the time the discharge was granted.   In re Mauzy (D. C.) 163 Fed. 900.

The record is entirely silent, both in the pleadings and proof, upon the material issues above set forth; and I am therefore of the opinion that I have no jurisdiction to enter affirmative findings upon such issues.   There is therefore nothing here to sustain the petitioner's right to the order prayed for, and it should be denied.

[5] This disposes of this matter; but it may not be out of place at this time to intimate that, as I construe this statute, fraud is the only ground specified in this statute for which a revocation by the judge may be granted (In re Meyers [D. C.] 100 Fed. 775, and citations); that the fraud required to be shown means fraud in fact, involving moral turpitude, or intentional wrong.   I question very much whether it includes implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.   It occurs to me that "fraud," as used in this statute, is synonymous with "bad faith."

[6] Upon a review of the record presented here, I am satisfied that this bankrupt acted in the best of good faith.   It appears by indisputable written evidence that she called the attention of her counsel, an able lawyer of the state of Iowa, to the situation with reference to this real property referred to in this petition filed herein, and was advised by him, in substance, that she had no interest therein, and that it should not be referred to in her bankruptcy proceedings.

[7] There is another question suggested, and that is whether or not the court of bankruptcy has general power, like any other court, to amend its decrees, in its discretion, in the furtherance of justice, in the absence of any statutory prohibition.   I am satisfied the court has this power.   In re Dupee, Fed. Cas. No. 4,183; In re Bimberg (D. C.) 121 Fed. 942.   I am of the opinion, however, that the court is not now in a position to act upon that authority, because more than one year has passed since the discharge was entered.

Let an order be entered denying the relief demanded by the petitioner.